# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

CHAWNTEL McCOY,

        Plaintiff,

v.                      CIVIL ACTION NO. 3:18-1546

C. O. FERGUSON, individually and in her official capacity;
C. O. ENDICOTT, individually and in his official capacity;
C. O. HALE, individually and in his official capacity;
C O. JOHN DOES I-V, individually and in their official capacities;
C. O. JOHN DOES VI-X, individually and in their official capacities;
ADMINISTRATOR KIM WOLF, individually and in his official capacity;
CAPT. CARL ALDRIDGE, individually and in his official capacity;
THE WEST VIRGINIA REGIONAL JAIL AND CORRECTIONAL
FACILITY AUTHORITY, an agency of the State of West Virginia; and
JOHN DOE, unknow person or persons,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On June 6, 2018, Plaintiff Chawntel McCoy filed a Complaint in the Circuit Court of Cabell County, West Virginia. Defendants then removed the action to this Court based upon federal question jurisdiction. *See* 28 U.S.C. § 1441. Defendants Endicott and Hale now have filed a Motion for Summary Judgment and a Motion to Supplement Motion for Summary Judgment. ECF Nos. 5 & 38. For the following reasons, the Court **GRANTS** the Motion for Summary Judgment and **DENIES AS MOOT** the Motion to Supplement Motion for Summary Judgment.

As relevant here, Plaintiff states that on February 13, 2018, she was being held as a pretrial detainee at the Western Regional Jail (WRJ). That morning, Plaintiff states she requested medical assistance because she had experienced a diabetic seizure. Defendant Catlyn Ferguson, a

correctional officer (C.O.) at the WRJ, was the first to respond to Plaintiff's cell.[1] The parties dispute what occurred between Plaintiff and Defendant Ferguson, and Defendant Ferguson has not moved for summary judgment. Plaintiff alleges in her Complaint that, after she left her cell, Defendant Ferguson told her "she was 'going to take her [Plaintiff] down.' Without provocation, Defendant Ferguson began implementing knee-strikes to Plaintiff's legs. Defendant Ferguson offered no verbal demand to get on the deck or on the wall." *Compl.*, at 2. The parties both state that Defendants Endicott and Hale, who also are correctional officers at the WRJ, responded to the scene after a call for officer assistance. According to the Complaint, Defendants Endicott and Hale instructed her "to get on the wall" and she "complied with the order." *Id*. Plaintiff further alleges that "Defendant Endicott [next] secured [her] arms behind her back and shoved her face against the wall. Defendant Hale then performed a leg-sweep, from right to left, while [her] arms were secured behind her back." *Id*. When she fell, Plaintiff asserts she hit her face and suffered "a ruptured right ear, broken jaw, fractured mandible, pinched nerve in her face and various lacerations and bruises." *Id*. Plaintiff states that Defendant Hale apologized to her several times over the next few days for using excessive force. *Id*.[2]

Plaintiff then filed this action pursuant to 42 U.S.C. § 1983 asserting that Defendants, including Defendants Endicott and Hale, violated her federal and state constitutional rights and her statutory and common law rights. Defendants Endicott and Hale argue, however, they are entitled to summary judgment because Plaintiff cannot show their actions were objectively

---

[1]Defendant Ferguson is no longer employed at the WRJ.

[2]Defendant Hale submitted an Affidavit denying this allegation. ECF No. 17-3.

unreasonable in light of a video recording of the incident. Additionally, they assert that they are entitled to qualified immunity.

# I.
# SUMMARY JUDGMENT STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Here, Plaintiff complains that summary judgment is premature because she has not had adequate time

for discovery. However, in light of the video evidence, the Court finds discovery on Plaintiff's claims against Defendants Endicott and Hale unnecessary.

## II.
## DISCUSSION

Initially, the Court recognizes that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989) (citations omitted). "Punishment" can arise from an "expressed intent to punish" or when a pretrial detainee shows the defendant's actions are not "rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979) (citation omitted).

In evaluating Defendants Endicott and Hale's motion in this case, the Court further relies upon the United States Supreme Court's more recent decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). Much like this case, the plaintiff in *Kingsley*, a pretrial detainee, claimed that several jail officers used excessive force against him. *Id*. at 2470. The officers did not dispute that they used force, but the parties disagreed as to whether the force was excessive. *Id*. In determining what standard should apply to such a claim, the Supreme Court held that a pretrial detainee must satisfy an objective standard and "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 2473. In applying this standard, courts should not act mechanically but, rather, look to the "'facts and circumstances of each particular case.'" *Id*. (quoting *Graham*, 490 U.S. at 396). A court must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. (citation omitted).

A court also must keep in mind "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell*, 441 U.S. at 540). Although not exhaustive, an evaluation of the reasonableness or unreasonableness of the force used may take into account: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (citing *Graham*, 490 U.S. at 396). In applying an objective standard, the Supreme Court also "recognize[d] that [r]unning a prison is an inordinately difficult undertaking, and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face[.]" *Id*. at 2474 (internal quotation marks and citations omitted). When disturbances arise, correctional officers "'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Id*. (quoting *Graham*, 490 U.S. at 397). Therefore, the Supreme Court has emphasized "that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id*.

In support of their motion, Defendants Endicott and Hale submitted a videotape of the event for the Court's review. The video has no audio, but it shows Defendant Ferguson walking through the "dayroom" to Plaintiff's cell.³ Defendant Ferguson looks in the window of Plaintiff's

---

³The "dayroom" is a large open area with tables and seating with cells along the perimeter

cell and enters the cell at approximately 7:16:36 a.m. The video does not show the interaction between Defendant Ferguson and Plaintiff inside of her cell. After approximately three minutes, Defendant Ferguson exits the cell and is shown leaning against and attempting to push the cell door closed to prevent Plaintiff from escaping.[4] After several seconds, the door to the cell swings open, and Plaintiff exits the cell into the dayroom at approximately 7:20:08 a.m. The cell door closes behind them. Defendant Ferguson and Plaintiff clearly are engaged in a struggle with one another, and they end up in a corner of the dayroom not far from Plaintiff's cell door. At that point, Plaintiff's back is to the wall, and Defendant Ferguson is in front of her. Defendant Ferguson's hands are on Plaintiff. Two other inmates, who were at a table in the dayroom, get up and approach within feet of the scuffle and hold Plaintiff's cell door open. One of the inmates then walks over to what appears to be within arm's reach of where Defendant Ferguson and Plaintiff are fighting. Within a few seconds, at approximately 7:20:42 a.m., Defendants Endicott and Hale run into the dayroom through the same door Defendant Ferguson used to enter, and they go to the opposite corner where Defendant Ferguson continues to struggle with Plaintiff. Within approximately four seconds of entering the room, Defendants Ferguson, Endicott, and Hale surround Plaintiff and, within approximately two to three more seconds, she is forced to the floor,[5] striking her head. Three other correctional officers then enter the room, and Plaintiff is immediately removed from the room with her hands restrained behind her back.

---

of the room. Plaintiff's cell was on the wall opposite of where Defendant Ferguson entered.

[4]Plaintiff contends that Defendant Ferguson told her to leave the cell, but she then pushed Plaintiff back as if it was a cruel joke.

[5]Although Plaintiff alleges in her Complaint that Defendant Hale performed a leg sweep to make her fall, Plaintiff states in her Sworn Statement attached to her Response that she was picked up and "body slammed." *Sworn Statement of Chawntel McCoy*, at 15 (Jan. 24, 2019), ECF No. 15-1.

In her Sworn Statement, Plaintiff attempts to explain her actions in the video. Although Plaintiff states she was not disobeying orders, she admits that she refused Defendant Ferguson's order to go back to her cell and lockdown. *Sworn Statement*, at 12. Additionally, Plaintiff states she was "trying to stop [Defendant Ferguson] and just hold [her] stance so [Defendant Ferguson] didn't slam [her] to the ground." *Id.* at 13. In essence, Plaintiff admits she was resisting, and the video clearly shows her resistance. She asserts that, when Defendants Endicott and Hale entered the room, they ordered her to be "'on the wall,'" but Defendant Ferguson was holding and kneeing her so she could not. *Id.* at 14. Once she was able to separate herself from Defendant Ferguson, she put her hands and face on the wall, but she "jerked" to turn around when she heard Defendants Endicott and Hale approach. *Id.* Within seconds, she was "slammed" to the ground. *Id.* at 15.

However, even if the Court accepts Plaintiff's explanation for her actions as true and draws all reasonable inferences in her favor, the critical inquiry is the reasonableness of the force from the perspective and knowledge of Defendants Endicott and Hale at that moment, not Plaintiff. *See Kingsley*, 135 S. Ct. 2474. Upon reviewing the video and Plaintiff's statement, the Court finds that Plaintiff cannot show the amount of force Defendants Endicott and Hale used was objectively unreasonable. Defendants Endicott and Hale were responding to an alert for officer assistance. When they ran into the room, they saw a dangerous physical altercation between Plaintiff and Defendant Ferguson, with two other inmates nearby, one approximately arm's reach from the fight. The video clearly shows Plaintiff resisting Defendant Ferguson's attempts to gain control, and Plaintiff freeing her arms and attempting to move away from her. Plaintiff admits that she "jerked" when Defendant Endicott and Hale approached. Without doubt, from their

-7-

perspective and knowledge, Defendant Endicott and Hale easily, reasonably, and should have concluded that immediate action was necessary because the physical altercation between Plaintiff and Defendant Ferguson posed an imminent threat to the safety of Defendant Ferguson and the other two inmates. Additionally, they reasonably could have concluded the situation was a significant threat and danger to the security of the facility. Defendants Endicott and Hale were required to access a tense and uncertain situation and make a split-second judgment to put Plaintiff on the floor to gain control over the situation. Although it is unfortunate that Plaintiff was injured, the Court finds the evidence unmistakably demonstrates that Defendant Endicott and Hale's actions and the force they used were reasonable from their perspective and knowledge under the objective standard outlined in *Kingsley*. Thus, the Court finds no constitutional violation and Defendants Endicott and Hale are entitled to summary judgment.

Additionally, Defendants Endicott and Hale argue they are entitled to qualified immunity. To determine the nature and scope of an asserted state-law immunity, the Court looks to state substantive law. *Davis v. City of Greensboro*, 770 F.3d 278, 281 (4th Cir. 2014) (citation omitted). In West Virginia, qualified immunity shields a correctional officer from personal civil liability where the officer was engaged in official acts that were carried out "within the scope of his authority," and which "did not violate clearly established laws of which a reasonable official would have known." Syl. Pt. 5, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751 (2014). Qualified immunity does not cover acts that are "fraudulent, malicious, or otherwise oppressive." *Id.* (internal quotation marks and citation omitted).

Here, Defendants Endicott and Hale were acting within the scope of their authority in responding to a physical altercation between another correctional officer and inmate. Plaintiff asserts these actions violated clearly established state laws and, therefore, Defendants Endicott and Hale are not entitled to qualified immunity. Specifically, in her Response, Plaintiff first asserts that Defendants Endicott and Hale's actions violated subsection West Virginia Code § 31-20-9(a)(1), which provides, in part:

> (a) *The purpose of the jail facilities standards commission is* to assure that proper minimum standards and procedures are developed for jail facility operation, maintenance and management of inmates for regional jails and local jail facilities. In order to accomplish this purpose, *the commission shall*:
>
> (1) Prescribe standards for the maintenance and operation of county and regional jails. The standards shall include, but not be limited to, requirements assuring adequate space, lighting and ventilation; fire protection equipment and procedures; provision of specific personal hygiene articles; bedding, furnishings and clothing; food services; appropriate staffing and training; sanitation, safety and hygiene; isolation and suicide prevention; appropriate medical, dental and other health services; indoor and outdoor exercise; appropriate vocational and educational opportunities; classification; inmate rules and discipline; inmate money and property; religious services; inmate work programs; library services; visitation, mail and telephone privileges; and other standards necessary to assure proper operation [.]

W. Va. Code § 31-20-9(a)(1) (2010), in part (italics added).[6] However, it is clear from the language of the statute that the duties set forth in paragraph (1) are the duties and responsibilities of the Jail Facility Standards Commission—not individual correctional officers. *See State ex rel. White v. Parsons*, 483 S.E.2d 1, 4 n.3 (W. Va. 1996) (explaining that "[t]he Standards Commission was created by the provisions of W. V[a]. Code § 31–20–8 (1989). The powers and duties of the

---

[6]This statute was repealed effective July 1, 2018, which was after the events that occurred in this action.

commission are set forth in W. Va. Code § 31–20–9 (1993) and include the power to promulgate rules under the APA, to implement the provisions of W. Va. Code § 30–20–1, *et seq*. One of the powers of the commission, set forth in W. Va. Code § 31–20–9 is to [p]rescribe standards for the maintenance and operation of correctional facilities and county and regional jails." (internal quotation marks omitted)). Clearly, Defendants Endicott and Hale as correctional officers cannot be faulted for any failure to set forth standards for the facility.

Plaintiff also asserts in her Response that Defendants Endicott and Hale violated the West Virginia Regional Jail Authority's Policy and Procedure Statement, found at West Virginia C.S.R. § 95-1-1[7] *et seq.*, which set forth the type of force that can be used on inmates. In particularly, Plaintiff claims they violated the "1 + 1" policy, in which correctional officers are permitted only to use force one step above an inmate's actions. However, even if the Court assumes, without deciding, that the "1 + 1" policy was a clearly established right, the evidence demonstrates that policy was not violated in the instant case. Plaintiff and a correctional officer were engaged in a fight when Defendants Endicott and Hale ran into the dayroom. Defendants Endicott and Hale made a split-second decision within their discretion to put Plaintiff on the floor to gain control, defuse the situation, and protect the safety and security of others and the facility. Defendants Endicott and Hale applied no more force than was necessary to reach that end. In less than one minute after Plaintiff was put on the floor, she was secured, helped to her feet, and led out of the room. The Court finds that no reasonable jury could conclude that Defendant Endicott and Hale's actions were unreasonable or exceeded what was required in violation of the "1 + 1"

---

[7]This regulation was repealed effective February 11, 2019.

policy. Moreover, there was nothing fraudulent, malicious, or oppressive about their actions. Thus, the Court finds that Defendants Endicott and Hale are entitled to qualified immunity.

Although the parties do not make any specific argument in the original briefing about the fact Plaintiff also names Defendants Endicott and Hale in their official capacities,[8] "[i]t is well established that the Eleventh Amendment bars suits against state officials in their official capacity for the recovery of money from the state even though the state is not named as a party to an action." *Gilmore v. Bostic*, 659 F. Supp. 2d 755, 764 (S.D. W. Va. 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself.'" *Id.*, (quoting *Will*, 491 U.S. at 71). As both Defendants Endicott and Hale are employed by the State and Plaintiff seeks money damages, they are entitled to summary judgment in their official capacities as well. *See McKelvey v. W. Reg'l Jail,* No. 3:13-CV-22206, 2016 WL 11483647, at *12 (S.D. W. Va. Jan. 6, 2016), report and recommendation adopted, No. CV 3:13-22206, 2016 WL 1090619 (S.D. W. Va. Mar. 21, 2016) (finding "officers enjoy immunity from suit under the Eleventh Amendment when named in their official capacities").

---

[8]Although Defendants Endicott and Hale did not raise Eleventh Amendment immunity directly, "because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*." *Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at *2 (S.D. W. Va. May 1, 2013) (internal quotation marks and citation omitted).

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendants Endicott and Hale's Motion for Summary Judgment and, as no claims remain against them, **DIRECTS** that Defendants Endicott and Hale be terminated as Defendants from this action. ECF No. 5. The Court further finds supplementation of the original motion unnecessary and, therefore, **DENIES AS MOOT** Defendants Endicott and Hale's Motion to Supplement Motion for Summary Judgment and Supplemental Motion for Summary Judgment. ECF No. 38, 39.[9]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 13, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9]The Court did not rely upon the additional briefing or exhibits in reaching the Court's decision. Defendant West Virginia Regional Jail and Correctional Facility Authority (WVRJCFA) also joined in Defendant Endicott and Hale's Supplemental Motion for Summary Judgment and Memorandum of Law in Support. However, it then requests it be granted summary judgment for reasons not articulated in Defendant Endicott and Hale's briefing. Under these circumstances, if the WVRJCFA believes it is entitled to summary judgment, it must file a its own motion for summary judgment so that Plaintiff may respond its arguments.